CASES

# SUPREME JUDICIAL COURT

## THE COUNTY OF KENNEBEC, JUNE TERM, 1830.

---

### JUDKINS & al. vs. EARL & al.

Where one conveyed " four clapboard machines and two shingle machines," then
being in a certain place in the town of L. " and likewise *the patent right* for L.
and J.—during the term of *the patent,* which is fourteen years from *Sept.* 3, 1813"
—this was held to be a conveyance of a patent right to use *both* the clapboard
and the shingle machines.

And the vendor, having no such patent right to the clapboard machine, was held
liable to refund to the vendee so much of the consideration money as he had
paid him therefor.

THIS was an action of *assumpsit* on a written contract, signed by
the defendants, *Sept.* 2, 1818, and expressed in these terms :—" This
may certify that we the subscribers have this day sold to Messrs.
*John & Daniel Judkins,* four clapboard machines and two shingle
machines, and all their apparatus thereunto belonging, water wheel
and drums, in Messrs. *Dwight & John Stone's* building in *Liver-
more,* on *Androscoggin* river ; and likewise the patent right for *Liv-
ermore* and *Jay,* all that is east of the *Androscoggin* river, and the
town of *Dixfield* in the county of *Oxford;* in consideration of nine
hundred dollars paid in notes for clapboards ; we sell all the above

2

machinery and right for the above towns, to make, use, and vend to others to use, during the term of the patent, which is fourteen years from the third day of *Sept.* 1813 ; provided the above named *John & Daniel* pay or cause to be paid two notes for clapboards which they have signed this day to be paid in *Hallowell,* to the amount of nine hundred dollars," &c. In the declaration a promise of the defendants was alleged, by this writing, that there was a patent right for the clapboard, as well as for the shingle machine ; and a breach was stated in the fact that there was no such patent right for the former, though there was one for the latter.

At the trial before *Weston J.* he ruled that the writing ought to be construed as an undertaking to convey a patent right for both kinds of machines. And it was proved that the defendants had no patent for the clapboard machine, unless the patent for the shingle machine could be so applied.

The defendants proved that soon after the sale, by reason of the new and improved invention of a circular saw, the machines for sawing clapboards were so far superseded as to become of very little value ; and were never imitated in the territory described in the contract ; but that the plaintiffs always had the exclusive use and enjoyment of them.

The plaintiffs proved that on calculating the value of the machines and the value of the patent right for the shingle machine, the latter would amount to about 475 dollars ; leaving the residue as paid for the purchase of a patent for the clapboard machine.

Hereupon the counsel for the defendants contended that to ascertain the damages, the jury ought to find how much the plaintiffs would have been benefitted had there been a patent for the clapboard machine, more than they had been by the purchase without a patent ; and to award this difference alone, as the plaintiffs' damages ; and that to entitle them to the consideration actually paid, the clapboard machines should have been returned. But the judge instructed the jury to find in damages for the plaintiffs to the amount of such part of the original consideration as was paid for the supposed patent right for the clapboard machine ; which they accordingly did. And the verdict was taken subject to the opinion of the court

upon the correctness of these opinions of the judge who sat in the trial.

*Allen*, for the defendants, contended that by the language of the contract only one patent right was intended to be conveyed. The singular number being employed, and the date of the patent being given, no reasonable man could mistake the intention of granting one right, to be applied, so far as it was applicable, to both the kinds of machine sold. This construction satisfies the words of the contract; and avoids the necessity of presuming that the party fraudulently undertook to sell what he knew he did not own.

As to the damages, the rule ought to be the same which should be applied to the plaintiffs had they been sued for a violation of the patent right,—viz. the damages actually sustained. Here the plaintiffs had the benefit of any enhanced value of the right; and they alone ought to bear the loss occasioned by its diminution. But whatever may be the rule, the machines themselves should have been returned, before any damages can be claimed. *Chitty on Contr.* 137; *Conner v. Henderson,* 15 *Mass.* 319; 2 *Stark. Ev.* 604; 5 *East.* 449; 1 *Taunt.* 566; 3 *Stark. Rep.* 32; *Kimball v. Cunningham,* 4 *Mass.* 502.

*R. Williams,* for the plaintiffs.

Parris J. delivered the opinion of the Court.

We are first called upon to give a construction to the written contract. The defendants conveyed "four clapboard machines and two shingle machines and all their apparatus thereunto belonging, water wheel and drums in Messrs. *Dwight* and *John Stone's* buildings in *Livermore,* on Androscoggin river, and likewise the patent right for *Livermore* and *Jay,* all that is east of the Androscoggin river, and the town of *Dixfield.*"

By this instrument we think it is manifest that the defendants undertook and intended to convey, and the plaintiffs supposed they purchased, not only the clapboard and shingle machines in *Stone's* building, and the right to use them, of which the defendants professed to have a patent; but also the exclusive right to use similar

machines within the territory described in said contract.    The words "patent right" must refer to some invention or improvement of which the venders were, or professed to be, the proprietors, and we perceive nothing in the contract to which such invention or improvement could be applicable, except clapboard and shingle machines.

The obvious meaning is the right, secured by patent, to construct, use, and vend to others to be used, machines of the description specified, within the towns of *Livermore*, &c.    The argument of the defendants' counsel, that the machines were to be used in conjunction, in the same mill, applies, perhaps, with some force to the machines actually sold, but it is not perceived that it can affect the right to construct and use other similar machines in other situations. That the sale and purchase of such a right was contemplated by the parties, is manifest from the language of the contract.    It cannot be presumed that the machines in *Stone's* mill were to be removed to *Jay* or *Dixfield*, and that the right, mentioned in the written contract, extended no further than to use these particular machines.

The next question is as to the rule of damages.    The counsel for the defendants contend that the jury should have found how much the plaintiffs would have been benefitted in case there had been a patent right for the clapboard machine, more than they were by the purchase of said machine without a patent, and that this sum ought to be the measure of damages.    The error here is in considering the term "patent right" as applying exclusively to the particular machines sold, and not giving it that enlarged construction to which it is fairly entitled, and which the parties undoubtedly intended, viz. the right to construct and use similar machines within the territory described.

When a patentee makes sale of a machine, for use, constructed according to his patent, we are not aware that it is usual for him formally to convey the right to use such machine.    The sale would perhaps be considered as carrying with it the right to use the particular article sold, without any formal stipulation to that effect; the right to use being incident to the machine.

The defendants conveyed to the plaintiffs four clapboard machines

and two shingle machines ; that conveyance has not been repudiated by the plaintiffs ; they still hold the property, and, for aught that appears in the case, are content with the execution of the contract thus far. In the same instrument, the defendants pretend to convey the patent right exclusively to make, use, and vend to others to use certain machines, the exclusive right to make and use which is not in the defendants.

It is manifest, therefore, that nothing passed by the conveyance, and that in such cases the rule of damages is the consideration paid.

But the defendants contend that, to entitle the plaintiffs to that rule of damages, they ought to have returned the machines which they received of the defendants instead of retaining them as they did. Such unquestionably would be the law if this action were founded upon a breach of the contract in relation to the machines. The case of *Conner v. Henderson,* and the other authorities cited in defence, would be applicable to such a case.—But in the case before us, nothing passed, and of course the plaintiffs have nothing to return. They contracted with the defendants for the exclusive legal right to make, use, and vend certain machines ;—they paid a fair consideration for that right ; and the jury have found that the defendants had no such exclusive right, and of course, could convey none. We are clearly of opinion that the jury were properly in-- structed, and that there must be judgment on the verdict.